**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EULALIA LÓPEZ RAMÍREZ, et al.<br><br>**Plaintiffs**<br><br>v.<br><br>GRUPO HIMA SAN PABLO, INC., et al.<br><br>**Defendants** | **CIVIL NO.** 16-3192(RAM) |

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is codefendant Dr. Maria Toledo-Gonzalez's *Motion in Limine* requesting that the Court strike Plaintiffs' expert witness, Dr. Allan Hausknecht (Dr. Hausknecht). (Docket No. 64). In response, Plaintiffs filed an *Opposition to Defendant's Motion in Limine at Docket No. 64* and codefendant Dr. Maria S. Toledo filed a *Reply to Opposition to Motion in Limine*. (Docket Nos. 65 and 68, respectively). Having reviewed the parties' arguments, the case record and the applicable law, the Court hereby **GRANTS** Dr. Maria Toledo's *Motion in Limine* at Docket No. 64. Dr. Allan Hausknecht's proffered expert opinions regarding the standard of care and Dr. Toledo's alleged negligence are stricken.

### I. BACKGROUND

On December 23, 2016, Mrs. Eulalia López-Ramírez ("Mrs. López") and Mrs. Laura Cristina Gaudier-López ("Mrs. Gaudier")

sued Dr. María Toledo-Gonzalez ("Dr. Toledo") and Centro Médico del Turabo, Inc. d/b/a Hospital HIMA San Pablo Caguas ("HIMA"), amongst other defendants, alleging medical malpractice. (Docket No. 1).[1] Specifically, after diagnosing Mrs. López with a facial nerve disorder and right hemifacial spasm, Dr. Toledo performed a right retrosigmoid craniotomy and microvascular decompression surgery on Mrs. López. (Docket No. 24 ¶¶ 10-17). While Plaintiffs affirm that the operative report indicates that it was a successful operation, they claim that inadequate medical treatment provided by Dr. Toledo, HIMA, and its medical and nursing staff "aggravated [Mrs. López's] simple facial spasm and caused a cerebral infarction, complete facial paralysis, complete hearing loss, ataxia, vestibular dysfunction, imbalance, taste dysfunction and visual dysfunction." Id. ¶¶ 18-19; 33. Additionally, Plaintiffs allege that Defendants were negligent because they did not provide Mrs. López with adequate neurological evaluation and treatment during her surgery and stay at HIMA. Id. ¶ 34. Both Dr. Toledo and HIMA deny that they failed to meet the standard of care. (Docket Nos. 16, 18 and 24).

---

[1] In their original *Complaint*, Plaintiffs included as defendants Dr. Toledo's husband and their conjugal partnership, unknown monitoring companies, and unknown insurance companies. (Docket No. 1). Plaintiffs ultimately filed three amended complaints specifying the names of some of said entities and individuals, namely Bromedicon, Next Step Medical Co. Inc., and Gustavo J. Nogales-Pérez. (Docket Nos. 5, 8 and 20-1). Plaintiffs voluntarily dismissed their claims as to Dr. Toledo's husband, Gustavo J. Nogales-Pérez, and their conjugal partnership because of the prenuptial agreement between them. (Docket No. 31 and 31).

Plaintiffs retained Dr. Allan Hausknecht ("Dr. Hausknecht") as their expert witness and proffered that he would testify as to "his review of the pertinent records, the standards of care applicable to this case, the defendant's departures from such standards, the causal relationship of these departures with the damages sustained by Mrs. López, the contents of his expert report and deposition, and the applicable medical literature." (Docket No. 49 at 37).

On September 18, 2019, codefendant Dr. Toledo filed a *Motion in Limine* ("Motion") requesting that the court strike Dr. Hausknecht as an expert for three reasons. (Docket No. 64). First, Dr. Toledo contends that Dr. Hausknecht's expert reports do not include a statement notifying the compensation received for his testimony and thus fail to comply with Fed. R. Civ. P. 26(a)(2)(B). Id. at 10. Second, Dr. Toledo posits that Dr. Hausknecht is not qualified to be an expert in this case because he is not trained in neurosurgery, has never performed the surgery in dispute and has never overseen interoperative neuromonitoring. Id. at 10-11. Third, Dr. Toledo argues that Dr. Hausknecht's contention that she was negligent because of Mrs. López's symptoms after the surgery is an improper *res ipsa loquitur* opinion. Id. at 11-12.

In response, Plaintiffs filed an *Opposition to Defendant's Motion in Limine* on October 2, 2019. (Docket No. 65). Plaintiffs argued that failing to include a statement of compensation was a

harmless error, especially considering that they produced Dr. Hausknecht's invoices during discovery. Id. at 8-9. They also affirmed that Dr. Hausknecht, a board certified neurologist, does not need to be a neurosurgeon to provide a relevant and reliable expert opinion. Id. at 10-11. Lastly, although Plaintiffs conceded that the *res ipsa loquitur* doctrine has been abrogated, circumstantial evidence is still admissible to prove negligence by Dr. Toledo. Id. at 12-14. On October 10, 2019, Dr. Toledo filed a *Reply to Opposition to Motion in Limine*. (Docket No. 68).

## II. LEGAL STANDARD

### A. The Admissibility of Expert Witness Testimony

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. Specifically, Fed. R. Evid. 702 ("Rule 702") establishes that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Pursuant to Rule 702, trial judges are tasked with "ensuring that an expert's testimony both rests on reliable foundation and

is relevant to the task at hand." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993). When applying this rule, judges must assume the "role of gatekeepers to screen expert testimony that although relevant, was based on unreliable scientific methodologies." González-Pérez v. Gómez- Águila, 296 F.Supp.2d 110, 113 (D.P.R. 2003) (citing Daubert, 509 U.S. at 597 (1993)) ("Pertinent evidence based on scientifically valid principles will satisfy those demands.")

When assessing the reliability of expert testimony, trial courts can consider the following factors discussed in Daubert: (1) whether the expert's theory or technique is generally accepted as reliable in the scientific community; (2) whether the theory or technique in question can be, and has been, tested; (3) whether the theory or technique has been subjected to peer review and publication; and (4) the known or potential rate of error of the theory or technique. *See* Daubert, 509 U.S. at 588-594.

In the performance of their gatekeeping function, judges must focus "solely on principles and methodology, not on the conclusions that they generate." Id. at 595. Although certainly conclusions and methodology are not entirely distinct from one another, "**a court may conclude that there is simply too great an analytical gap between the data and the opinion proffered**." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (emphasis added). In other words, under Daubert, an expert cannot merely state their qualifications,

conclusions and assurances of reliability. See Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1319 (9th Cir. 1995). "Moreover, if a witness is relying mainly on experience, he must provide more information for the Court to determine the reliability of his testimony." Santa Cruz-Bacardi v. Metro Pavia Hosp., Inc., 2019 WL 3403367, at *2 (D.P.R. 2019).

Thus, to ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." Figueroa v. Simplicity Plan de Puerto Rico, 267 F. Supp. 2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." Id. (citing Justo Arenas & Carol M. Romey, Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

### B. Expert Report Requirements

In order to be admissible, expert reports must also comply with Federal Rule of Civil Procedure 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B) requires that expert reports contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

These requirements make it clear that Rule 26(a)(2)(B) "call[s] for parties to make explicit and detailed expert disclosures." Santiago- Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006). Therefore, "expert-related disclosures are insufficient when they consist of 'sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony.'" Rivera- Marrero v. Presbyterian Cmty. Hosp., 255 F. Supp. 3d 290, 296-97 (D.P.R. 2017) (quoting Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc., 73 F.3d 546 (5th Cir. 1996)). *See also* Romero v. Drummond Co., Inc., 552 F.3d 1303 (11th Cir. 2008) (finding that the District Court did not abuse its discretion when excluding experts whose reports consisted of single paragraphs that merely recited the general subject matter of their expected testimony and lacked any of the substance required by Rule 26(a)(2)(B)).

In accordance with these requirements, Fed. R. Civ. P. 26(e)(2) dictates that parties have a duty to supplement an

expert's report by the time pretrial disclosures are due. The duty also applies to "[c]hanges in the opinions expressed by the expert whether in the report or at a subsequent deposition." Fed. R. Civ. P. 26(a) advisory committee's notes.

When a party fails to provide the information required by Rule 26(a) or (e), Fed. R. Civ. P. 37(c)(1) "authorizes the trial court to impose sanctions, up to and including dismissal of the action on account of a party's failure to comply with these automatic disclosure obligations." Aponte-Davila v. Municipality of Caguas, 2017 WL 3025896, at *1 (D.P.R. 2017). The First Circuit has further established that "[t]he baseline rule is that the required sanction [...] is mandatory preclusion." Santiago-Diaz, 456 F.3d at 276 (internal quotations omitted). However, while mandatory preclusion might be the norm, District Courts have discretion in selecting the appropriate sanction and preclusion is not automatic. Id. Moreover, "in the absence of harm to a party, a district court may not invoke the severe exclusionary penalty provided for by Rule 37(c)(1). This is especially so when, as was the case here, the exclusion would result in the dismissal of the plaintiffs' case." Cruz-Vazquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 58 n. 1 (1st Cir. 2010). *See also* Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) ("When fashioning a remedy, the district court should consider, inter alia, the reason for noncompliance, the surprise and prejudice to the opposing party,

the extent to which allowing the information or testimony would disrupt the order and efficiency of the trial, and the importance of the information or testimony.").

Additionally, in medical malpractice cases, plaintiffs must submit an expert report including "all of the opinions that the expert will express at trial and the reasons for them." Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77 (1st Cir. 2009); *see also* Gonzalez Rivera v. Hospital HIMA-Caguas, 2018 WL 4676925, at *3 (D.P.R. 2018). Thus, an expert's report must be detailed, complete and "include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor." Salgado by Salgado v. General Motors Corp., 150 F.3d 735, 741 n. 6 (D.P.R. 1998) (internal citations omitted).

**C. Which Physicians are Qualified to Testify as Experts**

When analyzing the admissibility of an expert witness, the trial court must first resolve "whether the putative expert is qualified by knowledge, skill, experience, training, or education," to offer testimony. Mitchell v. United States, 141 F.3d 8, 14 (1st Cir. 1998) (citation omitted). The First Circuit has reiterated that an expert physician does not need to be "**a specialist in a particular medical discipline to render expert testimony relating to that discipline**." Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15, 24 (1st Cir. 2003). "The fact that the physician is not a specialist in

the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985). Although credentials such as board certification in a medical specialty are relevant when considering the weight and probative value of expert witness testimony, they are not necessary for its admissibility. *See* Pages-Ramirez v. Ramirez- Gonzalez, 605 F.3d 109, 114 (1st Cir. 2010).

Furthermore, excluding testimony "that would otherwise 'assist the trier better to understand a fact in issue' simply because the expert does not have the specialization that the court considers most appropriate" is considered to be an abuse of the court's discretion. Pages-Ramirez, 605 F.3d at 114. *See also* Gaydar, 345 F.3d at 24-25 ("[I]t would have been an abuse of discretion for the court to exclude Dr. Rodriguez's testimony on the sole basis that his medical specialty was something other than gynecology or obstetrics.")

**D. Evidence in medical malpractice cases**

In medical malpractice cases under Puerto Rico law, plaintiffs must establish three main elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Laureano Quinones v. Nadal Carrion, 2018

WL 4057264, at *2- 3 (D.P.R. 2018) (quoting Marcano Rivera v. Turabo Medical Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)).

In these cases, physicians must comply with the national standard of care. See Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 190 (1st Cir. 1997). In other words, a physician's duty is to provide patients with medical care "that, in the light of the modern means of communication and education, meets the requirements generally recognized by the medical profession." Ramirez-Ortiz v. Corporacion Del Centro Cardiovascular de Puerto Rico y Del Caribe, 32 F. Supp. 3d 83, 87 (D.P.R. 2014) (quoting Santiago-Otero v. Mendez, 135 D.P.R. 540, 1994 P.R.-Eng. 909, 224 (1994)). Notably, "experts must prove that a standard of care is nationally used, rather than simply explaining a standard as based on their experience." Santa Cruz-Bacardi, 2019 WL 3403367, at *5. This can be achieved by referencing "a published standard, [discussion] of the described course of treatment with practitioners outside the District ... at seminars or conventions, or through presentation of relevant data." Strickland v. Pinder, 899 A.2d 770, 773-74 (D.C. 2006) (internal citations omitted).

Moreover, health-care providers are "presumed to have exercised reasonable care in the discharge of [their] functions." Lopez-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 142 (D.P.R. 2017) (internal quotations omitted). Therefore,

plaintiffs bear the burden of refuting said presumption. To do so, expert testimony must typically be used. Given that "medical knowledge and training are critical to demonstrating the parameters of a physician's duty, the minimum standard of acceptable care [...] must ordinarily be established by expert testimony." <u>Rolon-Alvarado v. Municipality of San Juan</u>, 1 F.3d 74, 78 (1st Cir. 1993). Only in medical malpractice suits "where the lack of care has been found to be so evident as to infer negligence" is other evidence "aside from expert testimony" sufficient to establish negligence. <u>Laureano Quinones</u>, 2018 WL 4057264, at *3 (internal quotations omitted).

### III. ANALYSIS

Dr. Toledo's *Motion in Limine* alleges that: (1) Dr. Hausknecht's expert report does not contain a statement regarding his compensation as required by Fed. R. Civ. P. 26; (2) Dr. Hausknecht is not qualified to be an expert in this case; and (3) Dr. Hausknect's testimony consists of an improper *res ipsa loquitur* opinion. (Docket No. 64 at 10-12). As discussed below, while the first two reasons are insufficient, Defendant's contention that the expert opinion is insufficiently supported warrants dismissal.

Although Plaintiffs concede that the expert report does not include a statement of compensation, they argue that this omission should be considered harmless. (Docket No. 65 at 8). On their part, Dr. Toledo has not alleged any specific harm. Although this Court

does not find any justification for failing to comply with Rule 26, in the "absence of harm," the Court may **not** strike the report for this reason alone. Cruz-Vazquez, 613 F.3d at 58 n. 1. *See also* Nacy v. D.F.C. Enterprises, Inc., 2012 WL 2569086, at *2 (W.D. Mo. 2012)("The Court agrees and finds that the failure to disclose [the expert's] compensation is harmless because the affidavit provided plaintiffs with the substance of his testimony so that plaintiffs could prepare to meet the testimony presented by defendants).

Likewise, Defendant's contention that Dr. Hausknecht is not qualified to be an expert lacks merit. The fact that Plaintiffs' expert is a neurologist and not a neurosurgeon affects the *weight* of his opinion, not its *admissibility*. *See* Payton, 780 F.2d at 155. *See also* Mitchell, 141 F.3d at 15. (an internist with specialties in hematology and oncology, could testify as to physicians' treatment of colonoscopy patient in wrongful death suit, even though he was not a specialist in gastroenterology).

However, Dr. Toledo's claims that Plaintiffs' expert report is improperly founded do affect the admissibility of said report. Given that doctors are presumed to have exercised reasonable care, Defendant argues that negligence cannot be assumed simply because a patient suffered an injury or treatment was not successful. (Docket No. 64 at 12). However, Dr. Toledo posits that "Dr. Hausknecht simply believes that there was negligence based on the

outcome. This is textbook *res ipsa loquitor* [sic]."[2] (Docket No. 64 at 11-12). Defendant correctly indicates that the Supreme Court of Puerto Rico has rejected the theory of *res ipsa loquitur* as the basis for recovery in actions for negligence under Puerto Rico's law." Nestor v. Hosp. Pavia, 2005 WL 348313, at *8 (D.P.R. 2005) (citing Bacó v. Almacen Ramon Rosa Delgado, Inc., 2000 JTS 122 (Jun 30, 2000)). Thus, in the context of determining the admissibility of expert testimony, proffered testimony that consists solely of a *res ipsa loquitur* opinion would lack the reliable methodology and specialized information required by Fed. R. Evid. 702.

In the present case, the only information offered by Dr. Hausknecht to establish negligence is a summary of Mrs. López's symptoms after her operation. Dr. Hausknecht even concedes that, based on the operation report, he would have expected the operation to be uneventful and successful. (Docket No. 64-1 at 3). Despite acknowledging the "textbook" nature of the operative report and the inherent risks of the surgery, Dr. Hausknecht concludes that Dr. Toledo was negligent without specifying the source of the standard of care applicable to Mrs. López's case and why it was not met. The proffered testimony makes it impossible to determine

---

[2] *Res ipsa loquitur*, Latin for "the thing speaks for itself," is a torts doctrine "providing that, in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence that establishes a prima facie case." RES IPSA LOQUITUR, Black's Law Dictionary (11th ed. 2019).

of the stated standard of care is nationally used or if it is based solely on Dr. Hausknecht's personal opinion. *See* Strickland, 899 A.2d at 773-74; Porter v. McHugh, 850 F. Supp. 2d 264, 268 ("Where the expert makes 'no attempt to link his testimony to any certification process, current literature, conference or discussion with other knowledgeable professionals,' there is no "basis for his discussion of the national standard of care."). Moreover, the report does not provide any data to sustain or explain the conclusory finding that there was a deviation from the standard of care.

Although Dr. Hausknecht's report states that he included copies of journal articles that "may be helpful" he fails to name them or relate the content of said publications to his assertion that Dr. Toledo was negligent. (Docket No. 64-1 at 5). "To comply with Fed. R. Civ. P. 26(a)(2)(B), the report necessarily needed to include this information, not simply provide copies of medical literature." Martinez v. United States, 2019 WL 3402950, at *2 (D.P.R. 2019). *See also* Baker v. Chevron USA, Inc., 680 F. Supp. 2d 865, 878 (S.D. Ohio 2010), aff'd sub nom. Baker v. Chevron U.S.A. Inc., 533 F. App'x 509 (6th Cir. 2013) (striking an expert report in part because the expert "made no effort to connect the medical literature to his opinions.").

In light of the above, "there is simply too great an analytical gap" between the content of the report and the opinion

proffered. <u>Gen. Elec. Co.</u>, 522 U.S. at 146. Dr. Hausknecht's deposition testimony is equally unhelpful, reiterating that Mrs. López's results "can only be explained by improper procedure" despite listing other causes for similar injuries. (Docket No. 64-3 at 20; 24-25).

Ultimately, Dr. Hausknecht's testimony would **not** assist the trier of fact with regards to identifying, let alone understanding, the applicable standard of care and any deviation from it by Dr. Toledo. [3]

### IV. CONCLUSION

For the reasons set forth herein, the Court finds that Dr. Allan Hausknecht's report and proffered testimony do not fulfill the requirements of Fed. R. Evid. 702 and the applicable case law. Wherefore, Defendant's *Motion in Limine* at Docket No. 64 is hereby **GRANTED**. Therefore Dr. Allan Hausknecht's proffered expert opinions regarding the standard of care and Dr. Toledo's alleged negligence are stricken.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 22nd day of January 2020.

<u>S/ RAÚL M. ARIAS-MARXUACH</u>
United States District Judge

---

[3] Despite Plaintiffs' proffer that he would testify as to the standard of care, Dr. Hausknecht repeatedly stated throughout his deposition that he is "testifying in this case regarding the *outcome* of a surgical procedure." (Docket No. 64-3 at 19-20) (emphasis added).