**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

|   |
|---|
| EULALIA LÓPEZ RAMÍREZ, et al. |
| **Plaintiffs** |
| v. |
| GRUPO HIMA SAN PABLO, INC., et al. |
| **Defendants** |

**CIVIL NO.** 16-3192(RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is codefendant Dr. Maria Toledo-Gonzalez's *Motion for Summary Judgment Incorporating Memorandum of Law in Compliance with Local Rule 7(a)* requesting the dismissal of the present case. (Docket No. 89). Having reviewed the parties' submissions in support and in opposition to the motion (Docket Nos. 94-99), the Court **GRANTS** the *Motion for Summary Judgment* at Docket No. 89. Judgment of dismissal with prejudice shall be entered accordingly.

### I. BACKGROUND

On December 23, 2016, Mrs. Eulalia López-Ramírez ("Mrs. López") and Mrs. Laura Cristina Gaudier-López ("Mrs. Gaudier") (jointly, "Plaintiffs") sued Dr. María Toledo-Gonzalez ("Dr. Toledo") and Centro Médico del Turabo, Inc. d/b/a Hospital HIMA San Pablo Caguas

("HIMA"), amongst other defendants, alleging medical malpractice. (Docket No. 1).[1] Specifically, after diagnosing Mrs. López with a facial nerve disorder and right hemifacial spasm, Dr. Toledo performed a right retrosigmoid craniotomy and microvascular decompression surgery on her. (Docket No. 24 ¶¶ 11-17). While Plaintiffs recognize the operative report stated that it was a successful operation, their *Complaint* claims that inadequate medical treatment provided by Dr. Toledo, HIMA, and its staff "aggravated [Mrs. López's] simple facial spasm and caused a cerebral infarction, complete facial paralysis, complete hearing loss, ataxia, vestibular dysfunction, imbalance, taste dysfunction and visual dysfunction." Id. ¶¶ 18-19; 32. Plaintiffs also allege that Dr. Toledo and HIMA (jointly, "Defendants") were grossly negligent because they did not provide Mrs. López with adequate neurological evaluation and treatment during her surgery and stay at HIMA. Id. ¶ 34. Defendants deny they failed to meet the standard of care. (Docket Nos. 16, 18 and 28).

Plaintiffs retained Dr. Allan Hausknecht ("Dr. Hausknecht") as their expert witness and proffered that he would testify as to "his review of the pertinent records, the standards of care

---

[1] Plaintiffs filed three amended complaints identifying some of these defendants, namely Bromedicon, Next Step Medical Co. Inc., and Gustavo J. Nogales-Pérez, Dr. Toledo's husband. (Docket Nos. 5, 8 and 20-1). Plaintiffs then voluntarily dismissed their claims as to Dr. Toledo's husband and their conjugal partnership. (Docket Nos. 31 and 32). Per Plaintiffs' request, the Court also dismissed the case against Bromedicon, Inc., Next Step Medical Co. Inc. and all unknown defendants. (Docket No. 85).

applicable to this case, the defendant's departures from such standards, the causal relationship of these departures with the damages sustained by Mrs. López, the contents of his expert report and deposition, and the applicable medical literature." (Docket No. 49 at 37). On September 18, 2019, codefendant Dr. Toledo filed a *Motion in Limine* requesting that the Court strike Dr. Hausknecht as an expert. (Docket No. 64). On January 22, 2020, the Court granted said motion and struck Dr. Hausknecht's expert report for failing to identify both a standard of care and Dr. Toledo's alleged deviation from the same. (Docket No. 87).

On February 12, 2020, Dr. Toledo filed a *Motion for Summary Judgment Incorporating Memorandum of Law in Compliance with Local Rule 7(a)* ("*Motion for Summary Judgment*" or "MSJ") alongside a *Supporting Statement of Material Facts* ("SMF") (Docket Nos. 89 and 89-1). HIMA then filed a *Motion for Joinder*, incorporating by reference the arguments set forth in the MSJ and SMF. (Docket No. 90 at 1-2). Further, the *Motion for Joinder* also stated that given that Dr. Hausknecht's report "makes no mention of any departures of the standard of practice from any other physician nor hospital personnel, the [MSJ] would equally apply to [HIMA]" and dismissal of the present action was warranted. Id. at 2. The *Motion for Joinder* was subsequently granted by this Court. (Docket No. 91). Plaintiffs opposed the MSJ and propounded additional facts ("*Opposition to MSJ*") (Docket Nos. 94 and 95). Dr. Toledo replied

to the opposition ("*Reply*") followed by Plaintiffs' response ("*Response*").[2] (Docket Nos. 98 and 99).

## II. LEGAL STANDARD

### A. Summary Judgment Standard under Fed. R. Civ. P. 56

Summary judgment is proper under Fed. R. Civ. P. 56(a) if a movant shows "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." A genuine dispute exists "if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Alicea v. Wilkie, 2020 WL 1547064, at *2 (D.P.R. 2020) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at *6 (D.P.R. 2020) (quotation omitted).

The party moving for summary judgment "bears the initial burden of showing that no genuine issue of material fact exists." Feliciano-Munoz v. Rebarber-Ocasio, 2020 WL 4592144, at *6 (1st Cir. 2020) (citation omitted). Whereas the non-movant may "defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation omitted). However, it "cannot merely 'rely on an absence of

---

[2] Plaintiffs alleged in their *Response* that Dr. Toledo failed to request leave to file her *Reply*. (Docket No. 99 at 1). However, Dr. Toledo *did* file a leave request which was then granted by this Court. (Docket Nos. 96 and 97).

competent evidence, but must affirmatively point to specific facts
that demonstrate the existence of an authentic dispute.'"
Feliciano-Munoz, 2020 WL 4592144, at *6 (quoting McCarthy v. Nw.
Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995)). Solely relying
on "conclusory allegations, improbable inferences, and unsupported
speculation" is insufficient to defeat summary judgment. River
Farm Realty Tr. v. Farm Family Cas. Ins. Co., 943 F.3d 27, 41 (1st
Cir. 2019) (quotation omitted).

Local Rule 56 also governs summary judgment. *See* L. CV. R.
56. Per this Rule, a nonmoving party must "admit, deny or qualify
the facts supporting the motion for summary judgment by reference
to each numbered paragraph of the moving party's statement of
material facts." Id. The First Circuit has stated that adequately
supported facts "shall be deemed admitted unless controverted in
the manner prescribed by the local rule." Advanced Flexible
Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d
510, 520 (1st Cir. 2015) (quotation omitted). Hence, "litigants
ignore Local Rule 56 at their peril." Calderón Amézquita v. Vices,
2019 WL 3928703, at *1 (D.P.R. 2019) (citation omitted).

**B. Expert Testimony in Medical Malpractice Cases in Puerto Rico**

The substantive law of Puerto Rico controls in a diversity
case. *See* Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351,
354 (1st Cir. 2015) ("Since this is a diversity case, we look to
federal law for guidance on procedural matters (such as the summary

judgment framework) and to state law (here, [Puerto Rico] law) for the substantive rules of decision."). Thus, in Puerto Rico a plaintiff in a medical malpractice case must prove three key elements: "(1) the duty owed (i.e., the minimum standard of professional knowledge and skill required in the relevant circumstances); (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and the harm." Santa Cruz Bacardi v. Metro Pavia Hospital Inc., 2020 WL 249433, at *6 (D.P.R. 2020) (quotation omitted). This duty owed, which is the standard of care owed by physicians to their patient, is based on a national standard. *See* Noel Martinez et al. v. United States of America, 2020 WL 5039242, at *4 (D.P.R. 2020) (citation omitted). Thus, "in the light of the modern means of communication and education," this duty must "meet[] the requirements generally recognized by the medical profession." Id. at *4 (quotation omitted). Moreover, considering that there is a presumption that "physicians have 'provided an appropriate level of care.'" Laboy-Irizarry, 2019 WL 3311270, at *9 (quoting Borges ex rel. S.M.B.W. v. Serrano-Insern, 605 F.3d 1, 7 (1st Cir. 2010)). Plaintiffs are obligated to refute this presumption by proffering evidence which shows the minimum required standard of care **and** the doctor's failure to achieve said standard. *See* Estrada v. United States, 2016 WL 4487740, *5 (D.P.R. 2016) (quotation omitted). Therefore, absent proof of this duty owed "**it is virtually impossible to prove**

**either breach or proximate cause**." <u>Vargas-Alicea v. Cont'l Cas.</u> <u>Co.</u>, 2020 WL 3470325, at *3 (D.P.R. 2020) (quotation and internal quotation marks omitted) (emphasis added).

To prove the "causal nexus" described in the third element, a plaintiff must establish "adequate causation." This adequate cause "is not every condition without which a result would not have been produced, **but that which ordinarily produces it according to general experience**." <u>Laboy-Irizarry v. Hosp. Comunitario Buen</u> <u>Samaritano, Inc.</u>, 2019 WL 3311270, at *9 (D.P.R. 2019) (quotation omitted) (emphasis added). The First Circuit has repeatedly held that expert testimony is **required** to prove causation in medical malpractice suits. This because medical malpractice is a field where issues are "scientifically driven and more nuanced than in most tort cases." <u>Martinez-Serrano v. Quality Health Servs. Of</u> <u>Puerto Rico, Inc.</u>, 568 F.3d 278, 286 (1st Cir. 2009). *See also* <u>Cruz-Vázquez v. Menonita General Hosp., Inc.</u>, 613 F.3d 54, 56 (1st Cir. 2010); <u>Pages- Ramírez v. Ramírez-González</u>, 605 F.3d 109, 113 (1st Cir. 2010); <u>Marcano Rivera v. Turabo Medical Ctr. P'ship</u>, 415 F.3d 162, 167 (1st Cir. 2005) (quotation omitted) ("[A] factfinder normally cannot find causation [a breach of the duty owed] without the assistance of expert testimony to clarify complex medical and scientific issues that are more prevalent in medical malpractice cases than in standard negligence cases.").

Therefore, it is not surprising that most medical malpractice cases in the District of Puerto Rico where the plaintiff's sole expert report has been stricken from the record are frequently dismissed. *See e.g.*, Noel Martinez, 2020 WL 5039242, at *6; Santa Cruz Bacardi, 2020 WL 249433, at *9; Laureano Quinones v. Nadal Carrion, 2018 WL 4057264, at *3 (D.P.R. 2018); Gonzalez Rivera v. Hosp. HIMA-Caguas, 2018 WL 4676925, at *5 (D.P.R. 2018), aff'd sub nom. Gonzalez-Rivera v. Centro Medico Del Turabo, Inc., 931 F.3d 23 (1st Cir. 2019); Rodriguez-Sanchez v. United States, 380 F. Supp. 3d 184, 189 (D.P.R. 2016); Rodriguez-Diaz v. Seguros Triple-S, Inc., 2009 WL 3066637, at *3 (D.P.R. 2009), aff'd, 636 F.3d 20 (1st Cir. 2011).

**C. Exceptions to the Expert Testimony Requirement**

There are some narrow exceptions where expert testimony is not necessary to prove causation in medical malpractice suits in Puerto Rico. These are "situations where common knowledge and experience are all that is necessary to comprehend a defendant's negligence" or "where negligence is grossly apparent," or "where a doctor's conduct violates a set standard." Rolón-Alvarado v. San Juan, 1 F.3d 74, 79 (1st Cir. 1993). The exceptions must include only situations where "the claimed medical malpractice **is sufficiently blatant or patent that lay persons,"** may **"legitimately recognize or infer negligence**." Id. (emphasis added). Plaintiffs bear the burden of proving the existence of

blatant negligence. *See e.g.* Rodriguez-Sanchez, 380 F. Supp. 3d at 194 (holding inapplicable the Rolón-Alvarado exceptions given that plaintiff failed to establish "a blatant or patent case of medical malpractice"); Mercado-Velilla v. Asociacion Hosp. del Maestro, 902 F. Supp. 2d 217, 239 (D.P.R. 2012) (finding the exceptions inapplicable because injuries caused by a medication was a "typical 'complex medical and scientific issue[]'" which required the support of a medical or scientific expert).

### III. FINDINGS OF FACT

Before discussing the undisputed facts, the Court must address a compliance issue which arose when reviewing Plaintiffs' additional facts. (Docket No. 94). Most of these facts are based on Dr. Hausknecht's expert report. Yet, the report was **stricken** from the record by the Court's order at Docket No. 87. Until the *Opposition to MSJ*, the record shows that Plaintiffs have not asked the Court to reconsider this decision. Hence, Dr. Hausknecht's report remains inadmissible evidence.

The First Circuit has held that "[i]n opposing a motion for summary judgment, a plaintiff must proffer **admissible evidence** that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (quotation omitted) (emphasis added). A stricken expert report is **not** admissible evidence. *See e.g.*, Crawford v. Newport News Indus.

Corp., 2018 WL 4561671, at *82 (E.D. Va. 2018), report and recommendation adopted in part, 2018 WL 2943445 (E.D. Va. 2018), appeal dismissed sub nom. Kershaw v. Newport News Indus. Corp., 2018 WL 8058614 (4th Cir. 2018) (plaintiff may not rely on doctor's analysis "for any point" since his testimony and opinions were stricken by the Court); Merriman v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 2011 WL 13234294, at *1 (W.D. Mo. 2011) (holding that because plaintiff relied upon stricken expert testimony to prove a defect, she had not presented admissible evidence to prove the existence of a defect); Denton v. Ne. Ill. Reg'l Commuter R.R. Corp., 2005 WL 1459203, at *5 (N.D. Ill. 2005) (except for stricken expert's report as to medical causation, plaintiff had not offered any expert testimony to support an inference of causation, and failed to produce admissible evidence of an essential element of her claim). Proffered facts based on Dr. Hausknecht's **inadmissible** expert report are not adequately supported by the record and cannot be considered on summary judgment.

After analyzing the SMF (Docket No. 89-1), Plaintiffs' additional facts (Docket No. 94) and Dr. Toledo's reply to said facts (Docket No. 98), and **only crediting material facts** that are **properly supported by a record citation and uncontroverted**, the Court makes the following findings of facts:[3]

---

[3] References to a Finding of Fact shall be cited as follows: (Fact ¶ _).

1. This is a civil action for damages arising out of alleged
   medical negligence by Dr. Toledo and other defendants filed by
   plaintiffs Mrs. López and Mrs. Gaudier who assert Federal
   Jurisdiction under 28 U.S.C. § 1332. (Docket No. 89-1 ¶ 1).

2. Plaintiffs' theory of recovery against Dr. Toledo is alleged
   substandard medical care including that Mrs. López "was not
   given adequate medical treatment by defendants," that Mrs.
   López's damages were caused by the fault or negligence of Dr.
   Toledo " who did not meet the required standards of care and
   reasonable prudence in the care provided to Mrs. López,"
   and that "[D]efendants did not provide Mrs. López with
   adequate neurological evaluation and treatment during her
   surgery and stay in the hospital." Id. ¶ 2.

3. Plaintiffs' alleged that Dr. Toledo deviated from the accepted
   standards of care by:

   a. "[failing] to perform the medical, consultations
      and/or medical and/or neurological treatments required
      to diagnose and/or avoid a massive stroke" once
      Defendants became "aware of the symptoms presented by
      Mrs. López." Id. ¶ 3a.

   b. "performing surgery without identifying, isolating and
      protecting the nerve and vascular tissue in the affected
      area." Id. ¶ 3b.

   c. "[failing] to timely diagnose the devastating

neurological damage in process." Id. ¶ 3c.

    d. "[failing] to provide adequate monitoring in the process to identify the risks and multiple perforations to the cerebral artery" and "the lack of adequate treatment and medical and/or neurological evaluation." Id. ¶ 3d.

    e. "the lack of adequate treatment and medical and/or neurological evaluation." Id. ¶ 3e.

4. Plaintiffs retained Dr. Hausknecht as their sole expert witness and proffered he would testify as to "his review of the pertinent records, the standards of care applicable to this case, the defendant's departures from such standards, the causal relationship of these departures with the damages sustained by Mrs. López, the contents of his expert report and deposition, and the applicable medical literature." Id. ¶ 4.

5. On January 22, 2020, the Court granted Dr. Toledo's *Motion in Limine* at Docket No. 64 and struck from the record Dr. Hausknecht's expert opinions regarding the standard of care and Dr. Toledo's supposed negligence. Id. ¶ 5.

6. Plaintiffs reserved and announced their right to use as their witness any expert witness announced by Dr. Toledo in the Joint Pretrial Conference Report ("JPCR") filed on July 12, 2018. (Docket Nos. 49; 94 ¶ 5).

7. In the JPCR, Dr. Toledo identified Dr. Ricardo H. Brau Ramírez

("Dr. Brau") as her expert witness and proffered that he
would:

> [T]estify as an expert in neurosurgery
> regarding his training, qualifications,
> experience, his review of the pertinent
> records, the standards of care applicable to
> the specific type of neurosurgical procedure
> pertinent to this case, the applicable
> standards before, during and after the
> procedure itself; important medical knowledge
> to understand the surgery performed and the
> complications suffered by the patient;
> explanations regarding the contents of his
> expert report and the applicable medical
> literature.

> (Docket No. 94 ¶ 6).

8. Dr. Brau's report did not question or contradict Dr.
Hausknecht's statement that the standard of care for the
surgery performed by Dr. Toledo included the duty to identify,
isolate, and protect the nervous tissue (cranial nerves) and
vascular structures (arteries and perforators). Id. ¶7.

9. Dr. Brau also opined that the surgical manipulations performed
by Dr. Toledo were unavoidable. Id. ¶ 10.

10. Dr. Brau's report stated that:

   a. "There should be no doubts that Mrs. López was fully
   informed and understood the risks, complications, and
   prognosis of her surgery and elected to proceed with it."
   (Docket No. 65-1 at 8).

   b. "The operation done by Dr. Toledo followed the standard
   of care. Dr. Toledo took all precautions and diligences

to minimize the risks and complications of this procedure." <u>Id.</u>

c. "[It is] highly improbable that direct surgical trauma to the nerves or the brainstem occurred during surgery because the patient [Mrs. López] would have woken from the anesthesia with a neurological deficit. This is not what medical record indicates [.]" <u>Id.</u> at 9.

d. "[T]he[re] is not even a trace of evidence in the medical chart that Dr. Toledo failed to identify, isolate, and protect the nervous tissue and vascular structure in this case." <u>Id.</u> at 10.

## IV. ANALYSIS[4]

### A. Plaintiffs Cannot Prove Dr. Toledo's Negligent Conduct Without Expert Testimony

Dr. Toledo's MSJ, which HIMA joined, is based on Puerto Rico case law which states that expert testimony is required to prove a standard of care and medical negligence and causation in medical malpractice suits. (Docket No. 89 at 1). Dr. Toledo posits, and

---

[4] While reviewing the record, the Court noticed that counsel for Dr. Toledo filed an MSJ at Docket No. 89 which copies extensively from this Court's opinion in <u>Santa Cruz Bacardi</u>, 2020 WL 249433, at *6. As in <u>Pagan Velez v. Laboy Alvarado</u>, the Court did not find "a single citation to [<u>Santa-Cruz Bacardi</u>], but did notice adjustments in the appropriate places which were commensurate with the facts" of the case at bar. <u>Pagan Velez v. Laboy Alvarado</u>, 145 F. Supp. 2d 146, 160–61 (D.P.R. 2001). Although some courts impose monetary sanctions upon such misconduct, this Court will not sanction Dr. Toledo's attorneys at this time. <u>Id.</u> But, a repetition of this conduct in the future will not go unnoticed. <u>See</u> <u>Pagan Velez</u>, 145 F. Supp. 2d at 161 (issuing the same warning); <u>Alamo v. Commonwealth of Puerto Rico</u>, 2006 WL 1716422, at *3 (D.P.R. 2006), <u>aff'd in part sub nom.</u> <u>Torres-Alamo v. Puerto Rico</u>, 502 F.3d 20 (1st Cir. 2007) (issuing a similar warning and declining to impose sanctions upon an attorney who extensively copied a judicial opinion and failed to cite said opinion).

the Court agrees with her, that since this Court struck Plaintiffs'
sole expert report, the claims against her cannot survive.

The Court previously struck Plaintiffs' expert report because
"[t]he proffered testimony makes it impossible to determine [if]
the stated standard of care is nationally used or if it is based
solely on Dr. Hausknecht's personal opinion." (Docket No. 87 at
14-15) (Fact ¶ 5). Further, the report did not provide any data to
explain its conclusory findings that a deviation from the standard
of care had occurred. Id. at 15. Thus, the report "would not assist
the trier of fact with regards to identifying, let alone
understanding, the applicable standard of care and any deviation
from it by Dr. Toledo." Id. at 16.

After reviewing the applicable case law and the arguments in
support and opposition to the MSJ, this Court believes that summary
judgment is proper. Without expert testimony, Plaintiffs cannot
establish Dr. Toledo's breach of a duty of care. Without
establishing this breach, Plaintiffs cannot establish sufficient
causation to link Dr. Toledo's alleged negligent behavior with
Mrs. López' current condition. Expert testimony is needed to prove
if Dr. Toledo's acts caused the aggravation of "[Mrs. López's]
simple face spasm, cerebral infarction, complete facial paralysis,
complete hearing loss, ataxia, vestibular dysfunction, imbalance,
taste dysfunction and visual dysfunction." (Docket No. 24 ¶ 32).

Further, Plaintiffs failed to proffer in their *Opposition to MSJ* sufficient material facts to show that Dr. Toledo's medical interventions contributed to Mrs. López's current state. (Docket No. 95). The arguments in their *Opposition to MSJ* are two-fold. First, they mostly utilized their opposition to request a reconsideration of the Court's decision to exclude Dr. Hausknetch's testimony at Docket No. 87. Dr. Toledo also highlighted this in her *Reply*. (Docket No. 98 at 1). But, the First Circuit has reiterated that a motion for reconsideration is "an extraordinary remedy which should be used sparingly." U.S. ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 127 (1st Cir. 2013) (internal quotation omitted). A district court may **only** grant one if there is a "manifest error of law, [...] newly discovered evidence, or in certain other narrow situations [such as a change in controlling law]." United States v. Peña-Fernández, 2019 WL 3716472, at *2 (D.P.R. 2019) (quoting Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014)). Here, Plaintiffs' opposition failed to present new evidence not previously reviewed by this Court, nor an intervening change in controlling law nor that a reconsideration was needed to correct a clear error of law or to avoid a manifest injustice. Hence, the reconsideration requested via the *Opposition to MSJ* fails to sufficiently aver why the Court should alter its decision to strike Dr. Hausknetch's testimony. This is also insufficient to avoid summary judgment.

Second, Plaintiffs also argued that by "reserv[ing] and announc[ing] their right to use as their own expert any expert witness announced by defendants" in the JPCR, they can use Defendants' sole expert witness, Dr. Brau, to establish Dr. Toledo's breach of duty of care. (Facts ¶¶ 6-7). Summary judgment is thus not proper because Defendants did not:

> (i) challenge Dr. Brau's qualifications (knowledge, skill, experience, training, or education) as an expert in his field; (ii) his expert testimony is reliable under the Daubert standard; (iii) the expert testimony is based on sufficient underlying facts and data; (iv) Defendants' arguments as to DR. TOLEDO's negligence go to the weight of the testimony rather than to its admissibility and are strictly related to the persuasiveness and credibility of Dr. Brau's expert opinion, and questions of persuasiveness and credibility are properly reserved for the jury; and (v) Dr. Brau's testimony and cross-examination, will help the jury to determine both the proper standards of care and the causal nexus between Defendants' negligence and Plaintiffs' damages.

(Docket No. 95 at 15).

Plaintiffs then invoked case law asserting that once an expert report is filed in a case, said expert belongs to either side. Id. at 16-17. Plaintiffs concluded by stating that "they can and will prove their case by preponderance of the evidence through Dr. Brau's testimony." Id.

Dr. Toledo's *Reply* cited several sections of Dr. Brau's report where he opines that Dr. Toledo followed the standard of care and that an unwanted result from any procedure performed by Dr. Toledo

was not evidence of negligence. (Docket No. 98 at 2-3). Plaintiffs'
sole argument in their *Response* reiterates that they announced
they would use Dr. Brau as an expert witness at trial and that Dr.
Toledo failed to cite any case law stating they could not use him.
(Docket No. 99 at 2). They also claim that "[t]here is no plausible
reason at law or equity to justify granting summary judgment in a
case that should be going forward to trial" and that doing so would
violate their "constitutional right to trial." Id. at 3.

The Court agrees with Plaintiffs that once designated, an
expert is available to either side. Per Fed. R. Civ. P. 26(b)(4)(A),
"[a] party may depose any person who has been identified as an
expert whose opinions may be presented at trial." *See also* S.E.C.
v. Koenig, 557 F.3d 736, 744 (7th Cir. 2009) (citing Fed. R. Civ.
P. 26(b)(4)(B)) ("A witness identified as a testimonial expert is
available to either side; such a person can't be transformed after
the report has been disclosed, and a deposition conducted, to the
status of a trial-preparation expert whose identity and views may
be concealed.") Nevertheless, summary judgment is proper *even* after
reading Dr. Brau's report "in the light most favorable" to
Plaintiffs. *See* Calderon Amezquita v. Rivera-Cruz, 2020 WL
4209296, at *6 (D.P.R. 2020) (citation omitted).

Here, while it is true that Dr. Brau's report did not directly
question or contradict Dr. Hausknetch's standard of care
allegations as to Dr. Toledo's duty to identify, isolate and

protect nervous tissue (Fact ¶ 8), the report still concludes that "the[re] is **not even a trace of evidence in the medical chart that Dr. Toledo failed to identify, isolate, and protect the nervous tissue and vascular structure in this case.**" (Fact ¶ 10d). Dr. Toledo highlighted this in her *Reply*. (Docket No. 98 at 2). Further, Dr. Brau avers in his report that the surgical manipulations performed by Dr. Toledo were unavoidable. (Fact ¶ 9). A cursory review of Dr. Brau's report does not show that Dr. Toledo failed to meet the standard of care, an essential element of any medical malpractice case. (Facts ¶ 8-10). Further, Fed. R. Civ. P. 26(a)(2)(B) states that an expert report must include "a complete statement of **all opinions the witness will express** and the basis and reasons for them" and "the facts or data considered by the witness in forming them." (emphasis added). This means that there is a presumption that Dr. Brau's report included all that he will express at trial. Plaintiffs carry the burden of proving the opposite is true. Hence, their claim that summary judgment is not proper given that they cannot anticipate nor be certain of which opinions Dr. Brau may have left out of his report and could testify about at trial, standing alone, is speculative at best. (Docket No. 99 at 2). Importantly, this argument **does not create a factual dispute** for purposes of summary judgment.

The case of In re Chantix (Varenicline) Prod. Liab. Litig. is helpful here. *See* In re Chantix (Varenicline) Prod. Liab. Litig.,

881 F. Supp. 2d 1333 (N.D. Ala. 2012). In said products liability case, plaintiff's expert report stated that the drug Chantix "should not be used as a first line therapy." Id. at 1341. This warning was not included in medication's label. Id. The plaintiffs in that case asserted that the expert "'is a well-qualified psychiatrist who could offer expert testimony at trial about the lack of "completeness" and "accuracy" and thus the inadequacy, of the July 2009 label[.]'" Id. at 1342. Yet, the Northern District of Alabama concluded that the plaintiff's assertions "do not rise to the level of evidence the court can consider on the pending motion for summary judgment. **Argument concerning what an expert witness "could" testify at trial is no more than rank speculation, not evidence**." Id. (emphasis added).

As stated above, the Court reaches the same conclusion here as to what Dr. Brau may or may not testify at trial. It is **not** evidence which the Court may consider when deciding whether to grant or deny summary judgment. It is well settled that "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position' is not enough to ward off summary judgment." Álvarez-Cabrera v. Toyota Motor Sales, U.S.A., Inc., 2020 WL 3620204, at *3 (D.P.R. 2020) (quoting Irobe v. United States Department of Agriculture, 890 F.3d 371, 380 (2018)).

Plaintiffs are therefore left without expert evidence to prove their medical malpractice case. Moreover, Plaintiffs'

insistence that they will call Dr. Brau as an expert witness shows that expert testimony is **required** to assist the finder of fact in determining if Dr. Toledo's alleged negligence caused Mrs. López to suffer, including but not limited to, a cerebral infarction, a complete facial paralysis and hearing loss. (Docket No. 24 ¶ 32). As it stands, Dr. Brau's report does not create a material fact which the Court can use to determine if Dr. Toledo was indeed negligent. Lastly, Plaintiffs may not rely on what they hope Dr. Brau might testify at trial to defeat summary judgment. Plaintiffs are missing all three elements required to prevail in a medical malpractice case as without expert testimony they cannot show: (1) the duty that Dr. Toledo owed to Mrs. López; (2) an act or omission on her behalf breaching said duty; and (3) a sufficient causal nexus between the breach and Mrs. López's current state. *See* Santa Cruz Bacardi, 2020 WL 249433, at *6. Summary judgment is proper here.

### B. Plaintiffs Fail to Prove Dr. Toledo's Conduct Was Blatant

Similarly, Plaintiffs aver in their *Complaint* that Defendants were "grossly negligent" because they did not provide Mrs. López with adequate neurological evaluation and treatment during her surgery and stay at HIMA. (Docket No. 24 at ¶ 34). They also allege that Defendants were "grossly negligent" when they "failed to perform the medical, consultations" or the neurological treatments to Mrs. López "required to diagnose and/or avoid a massive stroke."

Id. ¶ 35. Beyond these statements, however, a review of the record reveals that Plaintiffs do not proffer evidence that Dr. Toledo's conduct was "sufficiently blatant or patent that [a] lay person[]" could infer that her negligence caused Mrs. López's current state. Rolón-Alvarado, 1 F.3d at 79. Moreover, the fact that Plaintiffs repeatedly claim that they will call Dr. Brau as an expert witness shows that they believe that Dr. Toledo's conduct was not "sufficiently blatant" to forego expert testimony and that expert testimony *is* required in the present case. Thus, the exceptions articulated in Rolón-Alvarado are inapplicable here.

The First Circuit has long held that to prevail in a medical malpractice case "[a] plaintiff must prove, by a preponderance of the evidence, that the physician's negligent conduct was the factor that 'most probably' caused harm to the plaintiff." Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994) (quotation omitted). Plaintiffs have failed to do so here. As seen above, without expert testimony, Plaintiffs cannot prove all three elements required by Puerto Rico law in medical malpractice cases. As a result, they cannot prove this "most probably" standard and summary judgment is proper.

## V. CONCLUSION

Plaintiffs lack admissible expert testimony and cannot show that Dr. Toledo's conduct was sufficiently blatant that a lay person could infer that negligence "aggravated [Mrs. López's] simple facial spasm, [caused a] cerebral infarction, complete

facial paralysis, complete hearing loss, ataxia, vestibular dysfunction, imbalance, taste dysfunction and visual dysfunction." (Docket No. 24 ¶ 32). The Court **GRANTS** the *Motion for Summary Judgment* at Docket No. 89. Judgment in favor of all remaining defendants shall be entered accordingly.

       **IT IS SO ORDERED.**

       In San Juan, Puerto Rico, this 4th day of September 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge
